No. 22-30456

_____

# United States Court of Appeals
# for the Fifth Circuit

_____

**TELIAH C. PERKINS, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF D.J., A MINOR,**

*Plaintiff – Appellee*

v.

**KYLE HART; RYAN MORING,**

*Defendants – Appellants*

_____

**On Interlocutory Appeal from the United States District Court, Eastern District of Louisiana, No. 2:21-cv-00879, Honorable Wendy B. Vitter, Presiding**

_____

**BRIEF OF APPELLANTS**

_____

**Chadwick W. Collings (La. Bar. No. 25373)**
**Sarah A. Fisher (La. Bar No. 39881)**
**MILLING BENSON WOODWARD L.L.P.**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**985-292-2000**
ccollings@millinglaw.com
*Counsel for Kyle Hart and Ryan Morning*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| Persons/Entities: | Counsel: |
|---|---|
| Teliah C. Perkins, individually and as parent and natural guardian of D.J., a minor (party) | Stephanie Legros Willis<br>Nora Sam Ahmed<br>ACLU of Louisiana<br>1340 Poydras Street, Ste 2160<br>New Orleans, LA 70112<br><br>Keith Cohan<br>Ryan Mitchell Goldstein<br>Sean David Johnson<br>Reid Collins & Tsai LLP<br>1301 S Capital of Texas Hwy<br>Suite C-300<br>Austin, TX 78746<br><br>Vincenzo A. Novelli<br>Reid Collins & Tsai LLP<br>330 West 58th Street, Suite 403<br>New York, NY 10019Philip J. Kaplan |
| St. Tammany Parish Sheriff Randy Smith; Deputy Kyle Hart (party); Deputy Ryan Moring (party); | Chadwick W. Collings<br>Sarah A. Fisher<br>MILLING BENSON WOODWARD L.L.P.<br>68031 Capital Trace Row<br>Mandeville, LA 70471 |

OneBeacon Insurance Group LLC by                N/A
Atlantic Specialty Insurance Company
(Liability Insurer to St. Tammany
Parish Sheriff's Office)


**Certified by:**


*s/ Chadwick W. Collings*
**Chadwick W. Collings**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants respectfully request oral argument in this matter. Appellants believe oral argument will aid the Court in its consideration of the legal complexities of the doctrine of Qualified Immunity as applied to the facts of this case.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ........................................................iv

Table of Authorities ................................................................................vi

Statement of Jurisdiction ..........................................................................1

Statement of Issues Presented for Review ..................................................2

Statement of the Case ...............................................................................3

Summary of the Argument .......................................................................10

Argument ..............................................................................................12

    *Standard of Review* ..........................................................................12

  **I.**   **ALLEGATIONS CANNOT OVERCOME RECORD EVIDENCE** ...13

    *Summary Judgment Procedure and Evidence* ..........................................13

    *The District Court Deferred to Allegations and Ignored Evidence* .........16

    *Reversal is Warranted* .......................................................................30

    *Improper Analysis of D.J.'s First Amendment Claim* .............................33

  **II.**   **NO CLEARLY ESTABLISHED LAW = QUALIFIED IMMUNITY** .35

    *Excessive Force Against Teliah Perkins* .................................................38

    *Excessive Force or First Amendment Retaliation Against D.J.* ..............40

  **III.**   **CONCLUSION: SUMMARY JUDGMENT IS PROPER** ...................43

Certificate of Service ..............................................................................46

Certificate of Compliance .......................................................................47

## <u>TABLE OF AUTHORITIES</u>
<u>CASE LAW</u>

**United States Supreme Court**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)....................................................................15

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)....................................................................16

*Graham v. Connor*
    490 U.S. 386 (1989)...............................................................37, 41

*Heck v. Humphrey*
    512 U.S. 477 (1994)................................................ 8, 17, 28-29

*Mitchell v. Forsyth*
    472 U.S. 511 (1985).....................................................................1

*Mullenix v. Luna*
    136 S.Ct. 305 (2015)......................................................... 36-37, 43

*Pearson v. Callahan*
    555 U.S. 223 (2009)...............................................................34, 38

*Plumhoff v. Rickard*
    134 S. Ct. 2012 (2014)................................................................38

*Reeves v. Sanderson Plumbing Prods.*
    530 U.S. 133 (2000)....................................................................15

*Saucier v. Katz*
    533 U.S. 194 (2001)....................................................................38

*Scott v. Harris*
    550 U.S. 372 (2007).......................................................13, 30, 37

*White v. Pauly*
    137 S.Ct. 548 (2017)..............................................................36, 40

**United States Court of Appeals for the Fifth Circuit**

*Bush v. Strain*
        513 F.3d 492 (5th Cir. 2008)..............................................................28

*Buehler v. Dear*
        27 F.4th 969 (5th Cir. 2022).....................................30-34, 39, 42-44

*Chacon v. Copeland*
        577 F. App'x 355, 359 (5th Cir. 2014) .........................................13

*Dean v. Phatak*
        911 F.3d 286 (5th Cir. 2018)..........................................................35

*Delta & Pine Land Co. v. Nationwide Argibusiness Ins. Co.*
        530 F.3d 395 (5th Cir. 2008)..........................................................15

*Eisenbach v. Zatzkin*
        728 Fed. Appx. 307 (5th Cir. 2018).................................................14

*Elizondo v. Green*
        671 F.3d 506 (5th Cir. 2012)..........................................................42

*Gentry v. Lowndes County*
        337 F.3d 481 (5th Cir. 2003)..........................................................12

*Hare v. City of Corinth*
        135 F.3d 320 (5th Cir. 1998)..........................................................36

*Keenan v. Tejeda*
        290 F.3d 252 (5th Cir. 2002)..........................................................33

*Kinney v. Weaver*
        367 F.3d 337 (5th Cir. 2004)..........................................................32

*Little v. Liquid Air. Corp.*
        37 F.3d 1069 (5th Cir. 1994)......................................................14–15

*Melton v. Phillips*
        875 F.3d 256 (5th Cir. 2017)................................................ 12, 36-37

*Morales v. Boyd*
    304 Fed. Appx. 315 (5th Cir. 2008) ................................................. 14

*Orr v. Copeland*
    844 F.3d 484 (5th Cir. 2016) ........................................................ 14

*Thompson v. Campos*
    691 Fed. Appx. 193 (5th Cir. 2017) ............................................... 13

*Thompson v. Upshur County*
    245 F.3d 447 (5th Cir. 2001) ........................................................ 34

*Watson v. Bryant*
    532 Fed. Appx. 453 (5th Cir. 2013) ............................................... 34

*Whitney v. Hanna*
    726 F.3d 631 (5th Cir. 2013) .......................................................... 35

## CASES

*Tolan v. Cotton*
    854 F.Supp. 2d 444 (S.D Texas 2012) ............................................ 16

<u>STATUTORY LAW</u>

**Federal Law**

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1343 ................................................................................. 1

28 U.S.C. § 1367 ................................................................................. 1

42 U.S.C. § 1983 ......................................................... 1,7, 8, 15-17, 28, 30

**Louisiana Law**

La. R.S. 14:34 ................................................................................7, 17

La. R.S. 14:108 .............................................................................7, 17

La. R.S. 32:190 ...................................................................................7

La. R.S. 32:863 ............................................................5, 7, 9, 18, 39

## FEDERAL RULES

Fed. R. Civ. P. 50.............................................................................15

Fed. R. Civ. P. 56.............................................................................16

## **STATEMENT OF JURISDICTION**

This is an interlocutory appeal from an Order of the United States District Court for the Eastern District of Louisiana dated July 26, 2022 that denied Qualified Immunity to Appellants. ROA.1093–134. The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights violations), as well as 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' claims arose under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States of America and 42 U.S.C. § 1983. Appellate jurisdiction arises under 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (recognizing certain denials of Qualified Immunity may be appealed under 28 U.S.C. § 1291).

91359

1

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.  Did the district court err on summary judgment when it denied Qualified Immunity to Defendants based upon an improper application of the Qualified Immunity analysis?

2.  Did the district court err on summary judgment when it denied Qualified Immunity to Defendants when there was no clearly established case law identified, particularized to the facts of the case, that Defendants violated in an objectively unreasonable way?

91359

## <u>STATEMENT OF THE CASE</u>

This matter comes on interlocutory appeal from an Order of the United States District Court for the Eastern District of Louisiana filed on July 26, 2022 denying a *Motion for Summary Judgment* filed by Deputies Kyle Hart and Ryan Moring, Defendants-Appellants. ROA.1093–134.

Defendants are St. Tammany Parish Sheriff deputies sued on May 3, 2021 by Plaintiff-Appellee, Teliah Perkins, both individually and as parent and natural guardian of D.J., a minor. ROA.11–41. Plaintiffs' suit arose from an encounter with Defendants on May 5, 2020 at Ms. Perkins' residence in Slidell, Louisiana. Defendants filed their *Answer and Affirmative Defenses* on August 3, 2021, in which they affirmatively plead Qualified Immunity. ROA.122-146.

On Tuesday, May 5, 2020, around 3:10 p.m., Defendants were conducting a routine motorcycle patrol when Dy. Moring was dispatched to Jay Street in reference to a female recklessly operating a motorcycle in the vicinity. ROA.193, 228-229, 230-36, 237-42, 253. While passing the residence located at 2018 Jay Street, Defendants observed a female, later identified as Teliah Perkins, standing next to a motorcycle. ROA.193, 230-36, 237-42. After passing Plaintiff, they continued to the intersection. Dy. Moring contacted central dispatch to confirm the address of the complaint, which was confirmed as 2018 Jay Street. ROA.194, 769-71. After turning around, Defendants observed Plaintiff operating the motorcycle without a helmet in

91359

3

the roadway. ROA.231, 238. As Defendants approached, Plaintiff began to back her motorcycle into the driveway with the motor running. ROA.231, 238.

Defendants dismounted their patrol motorcycles and engaged Plaintiff who was also dismounting her motorcycle. ROA.204. The encounter with Plaintiff began as a custodial stop commenced by Dy. Moring with the intention of issuing a simple citation; Dy. Hart was assisting. ROA.204, 238. Before Defendants could explain the reason for their presence, Plaintiff immediately became agitated and began yelling. Dy. Moring requested Plaintiff's driver's license, proof of insurance, and registration for the motorcycle for the lawful stop of operating a motorcycle without a helmet. After handing her driver's license and a piece of paper to Dy. Moring, Plaintiff walked away and went inside the residence. Dy. Moring could hear Plaintiff yelling at someone inside to come outside and video the interaction. Plaintiff then returned with two males who began to apparently record the interaction between Plaintiff and the Defendants.[1] ROA.238-240.

---

[1]    Three videos were produced depicting the encounter at issue, only two of which are currently in the record, and one of which was clearly edited by someone other than Defendants. The first (ROA.334) was captured by Perkins' minor son, D.J. The second (ROA.335) was taken by Perkins' nephew ("J.P.") and has been undeniably altered.

Plaintiffs alleged that J.P.'s recording was not "edited" but that he took a screen-recording of the video that fast-forwards through certain parts because it was too long for him to share from his phone. ROA.420. When Defendants argued that the video has nonetheless been altered to omit certain content, Plaintiffs claimed the original video had been "inadvertently deleted." ROA.738.fn.5. Both sides submitted motions in limine on this matter, which were mooted by the court's denial of Defendants' *Motion for Summary Judgment*. ROA.1011-15, 1027-39.

Plaintiff then approached the Defendants who once again requested the proper paperwork for the motorcycle and explained she could not operate a motorcycle in the roadway without a helmet. ROA.239. Plaintiff replied that she was waiting on her insurance company to e-mail her a copy and that her helmet was in the house. ROA.239. Instead of contacting her insurance company, though, Plaintiff began calling various individuals, requesting their assistance because the police were present. ROA.239. During this time, Plaintiff became irate, continuously verbally attacking Dy. Hart, who nevertheless tried to deescalate the situation. ROA.239.

Several minutes passed, and Dy. Moring again asked Plaintiff to produce proof of insurance. As she was unable to produce proof of insurance, the situation grew hostile. Defendants contacted central dispatch to have the motorcycle impounded pursuant to LSA – R.S. 32:863.1. ROA.196, 204. As Dy. Hart began to fill out a wrecker sheet and citation forms, he noticed two males approaching toward the Defendants. ROA.240. Dy. Hart then requested they stay on the porch if they wished to record the interaction. ROA.240. At that time, both Defendants observed Plaintiff walk toward the front door of her residence, at which point she stated, "fuck y'all, I'm going inside." ROA.233, 240. At that point, Plaintiff was still subject to a custodial

---

The third video containing additional video footage was submitted to Judge Vitter by defense counsel on April 8, 2022, as requested by the court (ROA.1020) in further support of Defendants' *Motion for Summary Judgment.* Defendants submitted a letter to the court specifically requesting that upon receipt, said exhibit be filed into the record of this matter. After recent recognition of its omission, Defendants intend to file a motion to supplement the record on appeal to include this video.

91359

stop and thus was not free to leave. As she attempted to flee the lawful stop, Dy. Hart informed Plaintiff that she was under arrest and moved to place her in handcuffs. ROA.241, 254.

Ms. Perkins pulled away from Dy. Hart as he attempted to place her hands behind her back and continuously resisted the Defendants' attempts to handcuff her. ROA.334. As Plaintiff continued to resist arrest, Dy. Hart decided to place her on the ground to overcome her resistance and to secure her in handcuffs. ROA.241, 334. Once on the ground, Plaintiff continued to resist by thrashing her body from side to side. ROA.334. Defendants struggled through her resistance to get her onto her stomach so the handcuffs could be secured. ROA.334. Dy. Hart eventually secured the handcuffs and doubled locked them to protect Plaintiff's circulation. ROA.241, 334.

At that point, the two males approached again. Dy. Moring stood and ordered them to back up and not to interfere with Plaintiff's arrest. ROA.334.

As Dy. Hart tried to stand, Plaintiff flipped onto her back and kicked Dy. Hart in the legs, causing him to fall on top of her. ROA.334. Plaintiff continued to thrash back and forth while Dy. Hart tried to stand, and after regaining his balance, Dy. Hart helped Plaintiff to her feet, placed her in a handcuffed escort position, and moved her toward the street where she sat down cross-legged. ROA.334.

While Plaintiff waited (handcuffed) near the street, Dy. Moring noticed the two males drawing closer. Dy. Moring raised his open hand in a "stop" motion and

informed the two males, for the second time, that they needed to film from the porch of the residence. At that point, one of the males slapped Dy. Moring's hand away and continued to walk toward the scene. ROA.235. After refusing to comply with Dy. Moring's verbal commands and slapping his hand away, Dy. Moring drew his service taser, as a display of force, to prevent the two males from approaching any further. ROA.235, 334. They eventually complied and continued to apparently film the arrest from the porch.

Perkins was placed in the rear seat of a patrol unit and advised of her Miranda rights, though she continued to use abrasive language, scream, and kick the doors of the patrol unit. ROA.208, 235, 241-42. She was then transported to St. Tammany Parish Jail for booking.[2] ROA.208, 235, 242.

On July 26, 2021, the District Attorney's Office amended Ms. Perkins' bill of information to "R.S. 14:108 Resisting an Officer." ROA.243. The trial of Teliah Perkins proceeded before the Honorable Vincent Lobello, wherein Ms. Perkins was found guilty as charged. ROA.244-46.

This suit followed. Plaintiffs asserted claims against Deputies Hart and Moring for alleged: (i) Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 for false arrest, (ii) Fourth and Fourteenth Amendment violations

---

[2]     Plaintiff was arrested for: L.R.S. 14:108.2 (Resisting a police officer with force or violence); L.R.S. 14:34.2 (Battery of a police officer); L.R.S. 32:863.1 (No proof of insurance); and L.R.S. 32:190 (No safety helmet). ROA.208, 235, 242-46.

under 42 U.S.C. § 1983 for excessive force, (iii) Fourth Amendment violation under 42 U.S.C. § 1983 for unlawful seizure, (iv) Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 for excessive force on behalf of a minor, (v) First Amendment retaliation under 42 U.S.C. § 1983 on behalf of a minor, (vi) excessive force/battery under state law, (vii) false arrest under state law, (viii) excessive force/battery under state law on behalf of a minor, (ix) false imprisonment under state law, (x) malicious prosecution under state law, (xi) intentional infliction of emotional distress under state law, (xii) negligent infliction of emotional distress under state law, (xiii) assault under state law, (xiv) intentional infliction of emotional distress under state law on behalf of a minor, and (xv) negligent infliction of emotional distress under state law on behalf of a minor. ROA.11-39.

On February 6, 2022, Defendants jointly moved for summary judgment, asserting that they could not be liable for the claims alleged and that there was no genuine issue of material fact in that respect. ROA.203-27. Defendants argued that (i) there were no Constitutional or statutory violations in light of the uncontested material facts; and (ii) regardless, they were entitled to Qualified Immunity. ROA.203–46. Plaintiffs' Opposition to Defendants' *Motion for Summary Judgment* (ROA.369–401) conceded Perkins' § 1983 claim for false arrest and parallel state law claims for false arrest, false imprisonment, and malicious prosecution were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), as argued by Defendants.

ROA.213-17. The district court acknowledged this concession in its Trial Preparations and Procedures Order. ROA.1016-20.

On July 26, 2022, the district court filed an Order denying Defendants' *Motion for Summary Judgment* on all but one claim.[3] ROA.1093–134. The court, however, failed to address much of the evidence submitted by Defendants in support of their *Motion*. This failure was especially pronounced with respect to the actual video evidence of the encounter submitted by Plaintiffs. Instead, the district court incorrectly drew its own conclusions contrary to the video evidence and accepted Plaintiffs' rendition of the encounter as true. Additionally, neither the Plaintiffs, nor the district court, identified any clearly established case law particularized to the facts of this case which Defendants would have arguably violated in an objectively unreasonable way which would justify the denial of Qualified Immunity. Consequently, it was clear legal error for the district court to deny Defendants' motion, and Deputies Kyle Hart and Ryan Moring now appeal that error.

---

[3]     Defendants were granted partial summary judgment under La. R.S. 32:863 on Plaintiffs' "unlawful seizure" claim for the impounded motorcycle. The court concluded that Defendants were entitled to Qualified Immunity on that claim due to Plaintiff's failure to provide proof of liability insurance upon request. ROA.1129-32.

91359

## SUMMARY OF THE ARGUMENT

Throughout its Order denying summary judgment, the district court made clear that it was examining Defendants' claims for Qualified Immunity, but it did so by disregarding uncontested facts adverse to Plaintiffs and misapplying the Qualified Immunity analysis. The court consistently ignored much of Defendants' evidence and instead simply accepted many of Plaintiffs' allegations as true, even despite video evidence and expert reporting contrary to Plaintiffs' position in this case.

Each party submitted various evidentiary exhibits in connection with Defendants' *Motion for Summary Judgment*, including video evidence, deposition transcripts, Internal Affairs statements, medical records, audio dispatches, and public reports, among other items, all of which Defendants contend establish there is no genuine issue of *material* fact precluding a grant of summary judgment.

The district court, however, drew many conclusions that were unsupported in light of the video evidence. Since Qualified Immunity is an immunity not simply from liability but from suit itself, its effects are compromised when an action is erroneously permitted to go to trial. In failing to identify or discuss record evidence which precluded summary judgment, the court nullified appropriate summary judgment procedure and thereby improperly exposed Defendants to a trial.

Additionally, the district court erred in failing to identify any clearly established law particularized to the facts of this case that precluded a grant of

91359

Qualified Immunity. Instead, the court cited jurisprudence that only addressed Qualified Immunity as a general proposition. These cases were not particularized to the situation of an individual attempting to evade lawful arrest after failing to produce proof of insurance and attempting to flee a lawful custodial stop. The uncontested evidence establishes the Defendants responded by placing the individual in handcuffs only after overcoming her aggressive resistance. The cases cited by the district court were also not particularized to the situation of a noncompliant bystander who incessantly defied police orders and threated officer safety by video-recording too close to the incident, to which one of the Defendants ultimately was forced to respond by drawing his service taser as a display of non-lethal force in an effort to have the Plaintiff's son back away from the immediate area of his mother's arrest.

The United States Supreme Court has repeatedly stated that clearly established law, for purposes of overcoming Qualified Immunity, entails identifying particularized precedent that places the relevant constitutional issue beyond debate as to every reasonable officer. No particularized precedent in force at the time of the events relevant to this action established that Defendants' conduct violated any federal law and was objectively unreasonable. Consequently, the court also erred in denying Defendants' Qualified Immunity on this front.

91359

## **ARGUMENT**

This appeal seeks to correct the district court's legal errors made in connection with its denial of Dy. Kyle Hart and Dy. Ryan Moring's *Motion for Summary Judgment*, which, among other things, raised the defense of Qualified Immunity.

### *Standard of Review*

When summary judgment based on Qualified Immunity is denied, denial "is immediately appealable under the collateral order doctrine to the extent it turns on an issue of law." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (citation omitted). Such appeals are subject to *de novo* review by this Court. *Gentry v. Lowndes County*, 337 F.3d 481, 484 (5th Cir. 2003).

Once Defendants made their good-faith assertion of Qualified Immunity on summary judgment, the normal summary judgment burden of proof shifted, and it was Plaintiffs who were required to establish that the defense was not available. *See Melton*, 875 F.3d at 261. Plaintiffs failed to meet that burden, and the district court improperly evaluated Defendants' motion against Plaintiffs' bare allegations, ignoring the record evidence. Even more, the district court erred in relying on jurisprudence that addressed Qualified Immunity as a general proposition rather than requiring Plaintiffs to identify particularized case law which would support the denial of Qualified Immunity.

91359

When considering a challenge to a denial of a motion for summary judgment on the basis of Qualified Immunity, an appellate court *generally* assumes the validity of a plaintiff's version of facts. *Chacon v. Copeland*, 577 F. App'x 355, 359 (5th Cir. 2014). The "blatant-contradiction exception," however, sets forth a narrow exception to the appellate court's acceptance of a plaintiff's evidence on summary judgment when video evidence is available, as it is here. *Id*. When video evidence clearly captures the events in question, and those events are contradicted by a plaintiff's version of the story and further adopted by the trial court, the court of appeals should view the facts in the light depicted by the video evidence itself. *Scott v. Harris*, 550 U.S. 372, 374, 127 S.Ct. 1769, 1772, 167 L.Ed.2d 686, 686 (2007) (internal citation omitted). Within these limitations, the appellate court reviews the matter *de novo*. *Chacon*, 577 F. App'x 355, 358; *see* also *Scott,* 550 U.S. 372, 380.

It is necessary and appropriate for this Honorable Court to correct the district court's errors through reversal and a grant of Qualified Immunity in favor of Defendants-Appellants.

## I.    ALLEGATIONS CANNOT OVERCOME RECORD EVIDENCE

### *Summary Judgment Procedure and Evidence*

"Standard summary judgment procedure requires courts to review all of the record evidence, no matter which side supplied it." *Thompson v. Campos*, 691 Fed. Appx. 193, 193 (5th Cir. 2017). This review is essential because plaintiffs cannot

meet their burden of showing the unavailability of the Qualified Immunity defense by relying on "[c]onclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (citation omitted). Rather, once Qualified Immunity is plead, *plaintiff* bears the burden of identifying "specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of [his] case…" *Id*. At this "Rule 56" stage, the allegations in the pleadings must give way to "competent summary judgment evidence." *See Morales v. Boyd*, 304 Fed. Appx. 315, 318 (5th Cir. 2008).

More pointedly, and as this Court has summarized:

Plainly, Rule 56 means what it says: "judgment…shall be entered <u>forthwith</u> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

\* \* \* \* \*

[S]ummary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

*Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted) (emphasis original); *see Eisenbach v. Zatzkin*, 728 Fed. Appx. 307, 310 (5th Cir. 2018) (non-movant on summary judgment cannot rely on the allegations in the

complaint); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000) (noting a summary judgment standard has same inquiry as judgment as a matter of law); Fed. R. Civ. P. 50(a) (allowing judgment as a matter of law when there is no legally sufficient *evidentiary* basis for a party's claim).

While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075) (internal quotation marks omitted)). Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The general rules regarding summary judgment are even further manifest when dealing with claims asserted under § 1983 where the defendant raises Qualified Immunity as a defense, as Defendants have done here. As summarized by one court:

> The usual summary judgment burden of proof is altered in the case of a Qualified Immunity defense. Although Qualified Immunity is called an affirmative defense, the defendant asserting Qualified Immunity does not have the burden to establish it. Rather, **it is the plaintiff whose burden it is to negate the assertion of Qualified Immunity, once it is raised**. An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated **clearly established** law. The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must

demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.

*Tolan v. Cotton*, 854 F.Supp.2d 444, 463 (S.D. Tex. 2012) (emphasis added) (internal citations omitted), affirmed 713 F.3d 299 (5th Cir. 2013), reversed on other grounds, 134 S. Ct. 1861, 188 L.Ed.2d 895 (2014).

Thus, when the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party may satisfy its burden by merely pointing out that evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to the nonmoving party to go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).

### The District Court Deferred to Allegations and Ignored Evidence

The district court's Order made clear that the court was deferring to Plaintiffs' allegations in its analysis of the Defendants' motion.[4] More specifically, the Order made clear that the court:

---

[4]    Defendants note another case pending before this Honorable Court (*Cambre v. Gottardi,* Docket No. 19-30715) which originated from this same district court, in which the court mistakenly deferred to allegations in Plaintiff's complaint and ignored contrary record evidence.

1. Consistently considered the wrong crimes in determining whether Defendants' actions during the arrest were disproportionate in comparison to the nature of crimes committed; and

2. Ignored evidence, including recorded video footage in determining that:

   a. Plaintiffs posed no threat to Defendants. ROA.1115-1116, 1121;

   b. Ms. Perkins was not actively resisting arrest or attempting to evade arrest. ROA.1116;

   c. Ms. Perkins' claim of excessive force was not barred by *Heck v. Humphrey*. ROA.1108;[5]

   d. Defendants' actions during this interaction were unreasonable under the circumstances.

*Never once in the district court's opinion* is it discussed that, according to record evidence, Defendants' use of force was carried out in response to Ms. Perkins actively resisting arrest, for which she was charged with resisting a police officer with force or violence (L.R.S. 14:108.2) and battery of a police officer (L.R.S. 14:34.2), and for which she was ultimately convicted of misdemeanor resisting a police officer (L.R.S. 14:108). ROA.198, 208, 243-246. In determining that Defendants' actions during the arrest were "disproportionate in comparison to the

---

[5]    The court's application of *Heck v. Humphrey* was fatally flawed, focusing entirely on Plaintiffs' assertions regarding amount of force used to resist arrest rather than whether Ms. Perkins' § 1983 claim challenges the constitutionality of her criminal conviction.

minor nature of her crimes," the district court's Order focused solely on the fact that two of Ms. Perkins' additional charges were misdemeanors and "thus not serious." ROA.1113-14. The court also mischaracterized testimony, suggesting the reason Defendants were initially present on the scene must be the same reason that action had to be taken against Plaintiffs. ROA.464-465, 538, 544-545, 1111-113.

More specifically, the court lent the entirety of its finding here to the fact that the officers were initially present at Plaintiffs' home in response to a traffic violation, accepting Plaintiffs' allegations as true and ignoring the fact that Plaintiff was *actually* arrested for attempting to unilaterally terminate a traffic stop (ROA.212) after failing to produce proof of insurance pursuant to LSA – R.S. 32:863.1. ROA.754. The court, thus, plainly considered the wrong crimes and thereby downplayed the government's legitimate interest in using the minimum amount of force to overcome Plaintiff's resistance to her lawful arrest.

Ms. Perkins was stopped, albeit on her own property, because she was observed by Defendants operating a motorcycle on the roadway with no helmet. Ms. Perkins was going to be cited for failure to produce proof of liability insurance. She was, however, arrested for attempting to evade this lawful traffic stop. Ms. Perkins' arrest was effectuated using the minimal degree of force by Defendants to overcome her own level of unlawful resistance. The district court ignored both record evidence and the logical progression of events noted above and instead ruled based on the

91359

false assumption that Defendants exerted excessive force for the misdemeanor charge of operating a motorcycle without a helmet. There would have been no force required at all had Plaintiff simply submitted to her lawful arrest by the Defendants. In short, the charges were irrelevant, as Defendants only used the minimum level of force necessary to overcome Plaintiff's unlawful resistance to her arrest.

*Never once in the district court's Order and Reasons* is there any discussion of the fact that, according to the clear record evidence, Ms. Perkins' unlawful attempt to flee the scene of a lawful traffic stop, and D.J.'s close proximity to the officers, posed an immediate threat to officer safety warranting the degree of force and display of force used by Defendants. There is also no discussion by the court of any jurisprudence cited by Defendants detailing the appropriate steps taken by law enforcement, and the reasons therefore, regarding securing the scene of an arrest. The court ignored record evidence and took Plaintiffs at their word that they posed no threat to officer safety. More specifically:

1. Defendants produced an extensive Expert Report by John J. Ryan addressing the serious officer safety concerns posed by Perkins' attempt to leave the scene and D.J.'s close proximity to the officers. ROA.263-306. The Report concludes, and the video evidence confirms, that Ms. Perkins' incessant yelling, her countermanding instructions to D.J. regarding the

officers' directives, and her attempt to walk away from the traffic stop all presented significant officer safety issues.

2. Each Defendant submitted an affidavit in support of their *Motion for Summary Judgment*, each asserting that Ms. Perkins was arrested for attempting to flee the lawful traffic stop and her intent was confirmed by her saying something to the effect of "fuck y'all, I'm going inside." ROA.233, 240. While Ms. Perkins had previously entered the home during the interaction ostensibly to retrieve her proof of insurance, which the court notes (ROA.1114), this second attempt to re-enter the home was her first attempt to effectively terminate the traffic stop, which she stated verbally, and thus constituted the safety threat.

3. Defendants submitted sworn testimony of Erin Wright, the <u>only</u> independent eyewitness to the encounter, corroborating Defendants' version of events. ROA.255, 802-803, 952. Ms. Wright testified that the incident began with one of the Defendants attempting to write Ms. Perkins a traffic citation, eventually leading Perkins to yell, "fuck y'all, I'm leaving," whereupon she attempted to leave the scene. Defendants then informed Ms. Perkins that she was under arrest. ROA.952-953.

4. The court's Order rested on Plaintiffs' assertion that neither Ms. Perkins nor D.J. posed a threat to Defendants, reasoning only that Plaintiffs never

threatened the Defendants or referenced a weapon in the home. ROA.1115. The defense questions what basis the court had, in spite of countervailing record evidence, to support such an unsubstantiated subjective conclusion.

5. The court's Order even quoted *(verbatim)* colorful, yet immaterial language used by Plaintiff, such as the incident occurring "in broad daylight" to leap to the conclusion that Plaintiffs' actions posed no threat to Defendants. ROA.385, 392, 1093, 1115.

6. Defendants respectfully suggest that these findings by the district court miss the point. The facts clearly established that Defendants were conducting a valid and lawful traffic stop of the Plaintiff. During the course of this lawful custodial stop, Plaintiff unilaterally decided to terminate the stop and go back toward her home.[6] Dy. Hart then informed Plaintiff that she was under arrest. When Dy. Hart attempted to place Plaintiff in handcuffs, she began to actively resist. As the video evidence clearly and unequivocally demonstrates, Plaintiff's resistance was overcome with the minimal level of force needed to overcome her resistance and place her into custody. *Ipso facto*, there was no excessive force used and the district court's finding to the contrary was clear error.

---

[6] It is at this point that Plaintiff's son, D.J.'s video begins.

91359

21

Moreover, the court's Order regarding whether Defendants are entitled to Qualified Immunity on D.J.'s excessive force claim improperly defers to Plaintiffs' allegations by stating that "D.J. was an unarmed minor who did not threaten Dy. Moring's physical safety or the safety of another police officer or the general public." ROA.1121. This subjective conclusion by the district court is not only wrong, but it ignores video evidence that 14-year-old D.J. was roughly the same size and stature as Dy. Moring and was being actively ordered by his mother to defy police instructions while standing in close proximity to the officers while they were actively engaged in attempting to place his mother in custody. ROA.334, 813-14.

The court further improperly deferred to immaterial, nonbinding case law cited by Plaintiffs which argued that "at least seven circuits have denied Qualified Immunity to police officers alleged to have brandished a **<u>firearm</u>** at compliant suspects or innocent bystanders." ROA.814. (emphasis added). This conclusion ignored the clear and undisputed record evidence that a Dy. Moring displayed his departmental issued taser, a non-lethal device, in the direction of D.J. in an effort to have him back away from the scene where his mother was actively resisting her arrest.  ROA.814.  Simply put, a taser is not a "firearm," and the district court's haphazardly conflating the two was clear legal error.   This conclusion also ignored clear and unequivocal video evidence that, although D.J. was a bystander, he was non-compliant with Dy. Moring's lawful commands to back away from the vicinity

of his mother's arrest, and only complied with those commands after Dy. Moring displayed his non-lethal taser. ROA.235. The court went on to apply additional case law concerning law enforcement's use of guns, firearms, and other lethal weapons that have no application to this case. ROA.1122-24.

*Never once in the district court's opinion* is there any discussion that, according to record evidence, Defendants followed proper training and protocols throughout the encounter. More specifically:

1. According to John Ryan's Expert Report, "Hart and Moring acted consistently with generally accepted policies, practices, training, and legal mandates trained to officers for application in field operations." ROA.299. "Any reasonable and well-trained officer would have recognized that the arrest of Ms. Perkins, based on her obstruction of the officers' ability to carry out the traffic investigation, the towing of the motorcycle, and the citing of Ms. Perkins, was consistent with generally accepted policies, practices, training, and legal mandates trained to officers particularly when Ms. Perkins turned and began to walk away from the officers back toward her house." ROA.300. Support for this conclusion was laid out in forty-four well detailed pages of expert analysis, all ignored by the district court.

2. The court deferred to Plaintiffs' allegations that Defendants used excessive force and ignored record evidence to the contrary. Video evidence clearly

indicates that Plaintiff was only on the ground _at all_ because she actively resisted arrest and the officers slowly sat her down after she refused to put her hands behind her back. ROA.334, 867-68. She was not "tackled to the concrete/pavement" as repeatedly alleged, and she was calmly instructed numerous times to stop resisting. ROA.380, 386-88. The district court simply ignored Defendants' sworn testimony (ROA. 690-709), the St. Tammany Parish Sheriff's Office, Internal Affairs Division's Investigative Case Report (ROA.247-62), John Ryan's Report (ROA.294-305) and the video evidence (ROA.334) establishing that Defendants' actions were lawful and consistent with proper procedures and training. Moreover, the district court improperly relied on cases cited by Plaintiffs in opposition to Defendants' _Motion for Summary Judgment_ in which cooperative, non-fleeing individuals were tackled, struck, and slammed into a car after being handcuffed – none of which even remotely occurred in this case. ROA.388, 391, 1108, 1111.

3. The district court further ignored record evidence of the St. Tammany Parish Sheriff's Office's Policy and Procedures on _Use of Force_, which was attached to the report of Plaintiffs' own police procedures expert. ROA.677-682. For example, the Policy provides the following definitions:

A. **Use of Force**: The amount of effort required by police to compel compliance by an unwilling subject.

B. **Resistance**: The subject's attempt to evade an officer's attempt to control.

C. **Control**: The method an officer uses to neutralize the unlawful actions and to apprehend a subject.

D. **Reasonable Belief**: When facts or circumstances the deputy knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances. Reasonableness regarding use of force must be judged from the perspective of a reasonable officer on the scene at the time a decision is made.

*****

I. **Excessive force**: Force is excessive when its application is inappropriate to the needs and circumstances at hand in accordance with an ordinary officer's <u>objective reasonableness</u>.

Under these and other provisions, Defendants' actions, as shown by the video evidence, were legal and also proper under STPSO procedures and training on de-escalation techniques of field officers, which are in place to help facilitate safe and effective officer-civilian encounters. ROA.866.

*Never once in the district court's opinion* is it discussed that, according to record evidence, Defendants' use of force only began after Ms. Perkins resisted her lawful arrest and continued to resist throughout the entire encounter, even after she was handcuffed. Moreover, the court erroneously concluded that because Plaintiff was previously found guilty of resisting an officer in Louisiana state court and because she does not deny that she resisted arrest, the question of whether Plaintiff *continued* to resist arrest "is neutral in determining what interest the government has

in the use of force against Plaintiff." ROA.1117. The fact that Plaintiff was previously convicted and the fact that she does not now deny her actions does <u>not</u> somehow make it a "neutral" factor in the use of force analysis. Indeed, just after, and despite the court's reference to this factor as "neutral," the court inexplicably went on to hold Defendants' response to Ms. Perkins' resistance as "unreasonable." ROA.1117. Respectfully, this is neither logical nor reasonable, and such an erroneous conclusion by the district court clearly ignores the video evidence in favor of Plaintiffs' bare allegations. More specifically:

1. The court's Order held that "a disputed issue of material fact exists regarding the amount of force used by Defendants while attempting to arrest Plaintiff and after she was handcuffed and subdued. Plaintiff insists that she was choked twice and can be heard on video saying, 'why you choking me?'" ROA.1117-1118. First, the video recording is the clearest evidence of this encounter, so the court's appeal to Plaintiffs' allegations at all is erroneous. It is also clear that despite video evidence, the court improperly accepted Plaintiffs' own self-serving version of events, which are at odds with the videos. According to the video evidence, which is supported by John Ryan's Expert Report, while Dy. Hart attempted to lock the handcuffs, Perkins flipped onto her back and kicked Dy. Hart's leg, causing him to fall onto her. ROA.274. Dy. Hart attempted to catch himself

by placing his hands on the ground by her shoulders, and one of his hands landed briefly near her clavicle area. ROA.262, 291. The entire alleged "choking" episode lasted *less than two (2) full seconds*. ROA.305, 334. Defendants would respectfully suggest that such a conclusion, if allowed to stand, would necessarily mean that if, at any time during an otherwise lawful arrest of an individual who is actively resisting arrest, a law enforcement officer's hand comes within the vicinity of a suspect's clavicle for less than two (2) seconds, then that law enforcement officer has by definition used force that is "objectively unreasonable" and thus unlawful. This would be a profound and seismic shift in the law and would, respectfully, make it virtually impossible to ever place individuals, who make the conscious decision to actively resist arrest, into custody.

2. Each Defendant submitted an affidavit in support of their *Motion for Summary Judgment*, in which each asserted that Ms. Perkins continued with her abrasive language and violent nature after being placed in the rear seat of the patrol unit. She was heard screaming and observed kicking the doors of the backup police unit and had to be warned not to damage the unit. ROA.208, 235, 241-42.

The district court's Order next misapplied Fifth Circuit jurisprudence holding that an officer's continued use of force on a restrained subject is objectively

91359

unreasonable, which does not apply to the present matter. ROA.1117. The court further misapplied jurisprudence regarding use of force on individuals suspected of only "minor offenses" (unlike evading and resisting arrest) and jurisprudence wherein the seized individual "initially resisted" but became non-threatening during the officer's continued use of force. ROA.1118. The court, thus, ignored a mountain of record evidence distinguishing the case at hand from these inapplicable Fifth Circuit holdings in denying Qualified Immunity to the Defendants.

*Never once in the district court's application of Heck v. Humphrey* is there any discussion of the fact that this encounter was recorded, so the Parties' actions can be objectively scrutinized. In *Heck*, the Supreme Court instructed that, "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487; 114 S.Ct. at 2372. Though the application of *Heck* to excessive force claims is not always straightforward, Fifth Circuit jurisprudence has noted whether *Heck* bars an excessive force claim is a necessarily "fact-intensive" analysis which turns on "whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

Because the question of whether *Heck* bars an excessive force claim is a necessarily "fact-intensive" analysis, the fact that this encounter was recorded is exceptionally relevant. Frame by frame, the video in question clearly portrays the Defendants at all times meeting Plaintiff's resistance with only the degree of force necessary to overcome her resistance. ROA.334. To hold that Defendants' actions in this matter constituted "excessive force" *would* necessarily invalidate Ms. Perkins' underlying criminal conviction of resisting an officer. ROA.243-246. The district court, however, disregarded such clear evidence and instead relied upon Plaintiffs' allegations.

In truth, the district court failed to undertake any substantive consideration of the record evidence when considering Defendants' Qualified Immunity assertions.[7] This faulty analysis led the Court to state, "Plaintiff has properly rebutted Defendants' claim of Qualified Immunity." ROA.1118. Respectfully, the court demonstrated numerous leaps in reasoning and a clear disregard for the record evidence in denying Defendants' summary judgment based on Qualified Immunity, which Defendants aver was clearly erroneous.

Thus, Defendant-Appellants' primary contention in this appeal does not concern the correctness of the district court's determination of the genuineness of a

---

[7] For the sake a brevity, Appellants will not describe every evidentiary matter the district court failed to consider. However, Appellants note that their statement of uncontested material facts, which summarizes and cites to relevant record evidence, can be found at ROA.822-830.

fact issue based on record evidence; rather, it is that the district court's clear disregard for the record evidence. Appellants would also respectfully assert that, if this Court—or any court—were to look at the evidentiary record, this is a case in which "opposing parties tell two different stories, one of which [—the appellees'—] is blatantly contradicted by the record, so that no reasonable jury could believe it…" *Scott*, 550 U.S. 372, 380 (2007). Consequently, "a court should not adopt [appellees'] version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

### *Reversal is Warranted*

This Court has not shied away from <u>recently</u> reversing district courts in scenarios substantively identical to that set forth above.

For instance, in *Buehler v. Dear*, 27 F.4th 969 (5th Cir. 2022), nine police officers were sued in a § 1983 action for alleged false arrest, First Amendment retaliation, and Fourth Amendment excessive force after detaining a man for resisting arrest in Austin, Texas. Officers were patrolling the streets of downtown Austin when Antonio Buehler, a "police accountability activist," began standing too close to the officers to video-record their activities. *Id*. at 976. Buehler was given multiple warnings by the police to heed their instructions to maintain a sufficient distance while filming and was further warned that he would be arrested if he did not comply. *Id*. After nearly two minutes passed and upon Buehler's failure to

comply with police instruction, one of the officers stated, "Go ahead and turn around…You're under arrest." *Id*.

While this instruction was being given, Buehler began taking steps backward away from the officers as they walked toward Buehler to arrest him. *Id*. Buehler then turned his back on the officers to proceed away from them when one of the officers grabbed Buehler's wrists from behind and attempted to restrain him. *Id*. Three Austin police officers took Buehler to the ground and held him in a prone position while placing him in handcuffs, with Buehler suffering minor bruises and lesions as a result.[8] *Id*. at 978. A fourth officer approached and assisted in the arrest by holding Buehler's legs still. *Id*. Buehler remained on the ground for between 40 to 45 seconds and was arrested for misdemeanor interference with performance of official duties and resisting arrest.[9] *Id*. In addition to the minor abrasions, Buehler claimed to have suffered mental pain. *Id*. The incident was video recorded from multiple angles. *Id*.

The officers moved for summary judgment on Buehler's false arrest and excessive force claims based on Qualified Immunity. *Id*. at 978-79. The district court granted the officers' motion as to false arrest but denied the motion as to excessive force. *Id*. at 977. On interlocutory appeal, this Court concluded that summary

---

[8]     The procedure followed by the officers in *Buehler* is the same procedure followed by Defendants. ROA.286, 303-04. ("Plaintiff is again seen pulling her arms away from the Defendants and kicking her legs. The Defendants then place Plaintiff prone on her stomach and Deputy Hart kneels on the back of her legs as she is handcuffed.") ROA.1116-117.

[9]     Teliah Perkins was on ground for 1:15 minutes due to her own active resistance. ROA.334.

91359

judgment for the officers on Buehler's false arrest claim was proper and that the officers were entitled to Qualified Immunity on Buehler's First Amendment claim. *Id*. This Court also found that none of the officers involved in Buehler's arrest used excessive force in violation of the Fourth Amendment and, thus, reversed the district court's denial of summary judgment on that claim. *Id*. at 994.

On appeal, this Court noted that the issue presented was simply "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id*. at 979, citing *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir, 2004). The Court also noted the significance for purposes of appellate review that the record included video evidence of the arrest. *Id*.

This Court stated, "[w]e 'must measure the force used under the facts as a reasonable officer *would perceive them*…' [a]nd we have acknowledged that…a 'suspect who backs away from the arresting officers' is 'actively resisting arrest' – albeit mildly." *Id*. at 984. (citations omitted). The Court further held that the officers were entitled to Qualified Immunity based on their "measured and ascending" response to Buehler's noncompliance, noting that while Buehler's conduct may not have been "erratic," he relentlessly disobeyed the officers' unambiguous commands, thus, their measured and ascending response did not violate the Fourth Amendment. *Id*. at 984-85.

### *Improper Analysis of D.J.'s First Amendment Claim*

At present, not only is *Buehler* a shining example of why the district court's

Order should be reversed based on precedent, but it is another example of the court

ignoring Defendants' supporting arguments and deferring instead to Plaintiffs'

allegations. Defendants cited *Buehler* in their *Reply Memorandum in Support of*

*Summary Judgment* (ROA.799-820), which the court failed to acknowledge. This

failure led the court to erroneously analyze D.J.'s First Amendment Retaliation

claim, finding that Defendants' actions satisfied all three elements of a claim for First

Amendment Retaliation.[10] Under *Buehler*, however, D.J.'s conduct clearly exceeded

the bounds of the First Amendment, so the court's analysis should have stopped upon

failure to satisfy the first element.

During the verbal confrontation between the police officers and Antonio

Buehler, Buehler insisted that he was just filming; the officers insisted his videoing

was interfering.[11] *Id.* at 976. One officer repeatedly told Buehler to back away

because he was crowding the officer's space and inhibiting the officer's ability to do

his job. On this issue, specifically, the Fifth Circuit held that the officers' use of force

---

[10]    *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). ("The elements of a First Amendment retaliation claim are (1) that the plaintiff was engaged in a constitutionally protected activity, (2) the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) the defendants' actions were substantially motivated against the plaintiff's exercise of that activity.") ROA.1125-26.

[11]    The Court stated, "[i]t is noteworthy for purposes of appellate review that the record here includes extensive video evidence of Buehler's arrest and the events leading up to it from several different angles…we view the facts in the light depicted by the videotape."

91359

was not excessive, and the defendants were entitled to qualified immunity on

Buehler's First Amendment claim, reasoning that the officers took justified measures

in dealing with an individual who failed to maintain sufficient distance while

filming. *Id.* at 977. Defendants' *Reply Memorandum* quoted this Court's holding in

*Buehler*, stating "there is a line between filming the police, which is legal, and

hindering the police, which is not." ROA.870. This distinction accounts for

situations in which "filming veers from documenting to interfering." ROA.814-815.

*Never once,* however, did the district court's Order acknowledge or even attempt to

distinguish these facts from those in *Buehler*.

Mindful that the United States Supreme Court has counseled that Qualified

Immunity issues should be resolved "at the earliest possible stage in litigation,"

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted), it is unsurprising

that the process of appellate review of the record has been utilized in other cases as

well when a district court fails to explain the record bases for supposed "fact issues."

*See, e.g.*, *Watson v. Bryant,* 532 Fed. Appx. 453, 457, 460 (5th Cir. 2013) (reversal

and finding of Qualified Immunity on appeal after district court's denial of same

when district court made bare conclusion that fact issues existed); *Thompson v.

Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001) (appellate court reversed denial of

Qualified Immunity to sheriffs after district court failed to explain the facts upon

which it relied and appellate court reviewed record on its own).  Even when this

91359

34

Court has chosen not to review the record itself, it still recognizes a district court's bare claim of "fact issues" as an error which requires addressing on remand. *See, e.g.*, *Dean v. Phatak*, 911 F.3d 286, 290 (5th Cir. 2018) (noting the inadequacy of the district court's citation to pleadings, rather than record evidence, in the district court's denial of Qualified Immunity and stating a Qualified Immunity denial cannot be affirmed in the absence of summary judgment evidence relied upon).

In light of the district court's clear error in failing to identify the record evidence upon which it determined there were genuine issues of material fact which precluded summary judgment and its continued reliance upon Plaintiffs' allegations, this Court should reverse the district court and enter judgment in favor of Appellants.

## II.    <u>NO CLEARLY ESTABLISHED LAW = QUALIFIED IMMUNITY</u>

Not only did the district court fail to consider Defendants' entitlement to Qualified Immunity as against the record evidence, but both the district court and Plaintiffs were unable to identify any particularized and clearly established case law demonstrating that Defendants were not entitled to Qualified Immunity.

As this Court has reminded litigants, Qualified Immunity protects "all but the plainly incompetent or those who knowingly violate the law" in situations in which "existing precedent…placed the statutory or constitutional question ***beyond debate***." *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (emphasis added) (citations omitted).  Once it is raised, it is the **<u>plaintiff's burden</u>** to negate the assertion of

Qualified Immunity by establishing: (1) "that the official violated a statutory or constitutional right" and (2) "that the right was '***clearly established***' at the time of the challenged conduct." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (emphasis added) (citations omitted).

This Court has stated that the "second prong" of the inquiry "is better understood as two separate inquiries: whether the allegedly violated rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). "[O]bjective reasonableness is a question of law for the court." *Id.* at 328.

In 2017, the United States Supreme Court "reiterate[d] the longstanding principle that 'clearly established law' should not be defined at a 'high level of generality.'" *White v. Pauly*, 137 S.Ct. 548, 552 (2017). "Otherwise, '[p]laintiffs would be able to convert the rule of Qualified Immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id*. at 552 (citation omitted). "Abstract or general statements of legal principle untethered to analogous or near analogous facts are not sufficient to establish a right 'clearly' in a given context." *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017).

In the case of *Mullenix v. Luna*, the U.S. Supreme Court explained:

> We have repeatedly told courts…not to define clearly established law at a high level of generality." The dispositive question is "whether the

violative nature of particular conduct is clearly established." This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.

The correct inquiry, the Court explained, was whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the "situation [she] confronted." The Court…noted that "this area is one in which the result depends very much on the facts of each case," and concluded that the officer was entitled to Qualified Immunity because "[n]one of [the cases] *squarely governs* the case here."

136 S.Ct. 305, 308–09 (2015) (internal citations omitted).

The Fourth Amendment inquiry for assessing the use of excessive force is broadly based and objective. *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). The paramount consideration is whether officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id* at 397. Moreover, "an officer's evil intentions will [still] not make a Fourth Amendment violation out of an objectively reasonable use of force." *Id* at 388.

In *Scott v. Harris*, 550 U.S. 372, 383, the Court cautioned against the use of "an easy-to-apply legal test in the Fourth Amendment context." Rather, the use of force in effectuating a seizure is analyzed:

. . . from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." We thus "allo[w] for the fact that police officers are often forced to make split-second judgments—

> in circumstances that are tense, uncertain, and rapidly evolving—about
> the amount of force that is necessary in a particular situation.

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (internal citations omitted).

Consequently, "[q]ualified immunity operates…to protect officers from the

sometimes 'hazy border between excessive and acceptable force' and to ensure that

before they are subjected to suit, officers are on notice their conduct is unlawful."

*Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citations omitted) (overruled in

part on other grounds in *Pearson*, 555 U.S. 223, 227 (2009)).

### *Excessive Force Against Teliah Perkins*

Within this framework, a few key factors were neglected by the district court

in considering whether Defendants acted in an objectively unreasonable manner in

contravention of clearly established law. At the beginning of its Qualified Immunity

analysis in its opinion on summary judgment, the court stated plainly that Qualified

Immunity "shields officers from liability unless their conduct violates a clearly

established federal right of which a reasonable person would have known."

ROA.1109. Nine pages later, without providing any further attention or detail to this

prong of the analysis, the court stated, "[w]ithin the Fifth Circuit, the law has long

been clearly established that an officer's continued use of force on a restrained and

subdued subject is objectively unreasonable." ROA.1118. (citation omitted). Based

solely on these two statements, the court leapt to the conclusion that "Plaintiff has

properly rebutted Defendants' claim of qualified immunity." ROA.1118.

91359

There are several errors with this conclusion. First, it overlooks the fact that Defendants did not violate any clearly established law in their initial attempts to arrest Ms. Perkins. More specifically, not one of the cases cited by the district court involved an instance in which it was held unconstitutional for officers to arrest a suspect who attempted to unilaterally terminate a traffic stop after failing to produce proof of liability insurance as required by law and actively resist arrest.[12] By that fact alone, Defendants are entitled to Qualified Immunity.

Second, the district court's supposition that the Defendants' continued use of force on Plaintiff was objectively unreasonable ignores record video evidence that Ms. Perkins continued to lash out and aggressively resist even after she was handcuffed. ROA.334. Even so, Defendants' actions toward Ms. Perkins after she was handcuffed remained "measured and ascending."[13] *Buehler*, 27 F.4th 969, 984-85. Third, the district court cited several cases in which it suggested cast doubt on

---

[12]     Under LSA – R.S. 32:863.1, Evidence of Compulsory Motor Vehicle Liability Security, see (B)(1) and (C)(1)(a): "When a law enforcement officer stops a vehicle for any [] reason, the law enforcement officer shall determine if the owner or lessee of [the] vehicle is in compliance with the provisions of this Section which require evidence of liability insurance or other security…If the operator of a motor vehicle is unable to show compliance with the provisions of this Part by displaying the required document when requested to do so, the motor vehicle shall be impounded, and the operator shall be issued a notice of noncompliance." ROA.816.

[13]     During a conference with all counsel on July 27, 2022, the Honorable Wendy Vitter expressed her concern with the continued use of force against Teliah Perkins, which she alleged persisted after Ms. Perkins was handcuffed and "stopped resisting." See also ROA.1117. Defendants reassert that video evidence confirms Defendants' use of force persisted in a measured and ascending manner in response to Perkins' resistance, which persisted even after being handcuffed.

91359

the reasonableness of the Defendants' actions, and while some of the cases did hold the officers' use of force to be unconstitutional in each respective setting, not a single case cited by the court contained even a remote suggestion of the "particularized facts of [this] case" which would have thus placed the statutory or constitutional question surrounding the Defendants' actions "beyond debate." *White*, 137 S. Ct. 548, 551 (2017). In fact, there is to Defendants' knowledge no case holding as such, nor was any cited by the Plaintiffs or the District Court. Thus, the District Court's failure to identify a violation of any clearly established, protected right entitled Defendants to Qualified Immunity, and the denial of their *Motion for Summary Judgment* was in error.

### *Excessive Force or First Amendment Retaliation Against D.J.*

As previously mentioned, the district court denied Qualified Immunity on D.J.'s excessive force claim by citing several cases wherein courts have held that it is often unconstitutional for an officer to brandish a deadly weapon, particularly a firearm, at a minor or at an individual who is not perceived as a danger. ROA.1118-1124. Oddly, though, the court did not disagree with Defendants' argument, supported by jurisprudence, that a taser is <u>not</u> a deadly weapon. The court instead simply stated that "all force, deadly and non-deadly, must be justified by the need for the specific level of force employed."[14] ROA.1124. Such a broad and sweeping

---

[14]     Dy. Moring displayed but did not actually fire his taser at any point during the encounter.

pronouncement of the law falls far short, however, of explaining how it is "objectively unreasonable" to the display a non-lethal taser to an individual who is in close proximity to an area where officers are engaged in attempting to place in custody an individual who is actively resisting arrest and who has ignored multiple lawful commands to back up.   This critical factor alone differentiates every case cited by the court from the "particularized facts of the case" at hand.

The district court instead pointed out that "courts have determined that '[u]sing force against someone who is not actively resisting arrest is in violation of clearly established law.'" ROA.1123. As cited in Defendants' *Motion for Summary Judgment*, however, the Supreme Court has noted that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." ROA.218. (citing *Graham*, 490 U.S. 386, 396). Thus, the district court failed to cite to, or discuss any case law, which would suggest that an officer's momentary display of non-lethal force (a departmental taser) to a non-compliant individual to secure the scene of an active arrest is clearly unreasonable.[15]

---

[15]    While the court also noted briefly that it was unreasonable for Dy. Moring to "push D.J. in the chest" before drawing his taser (ROA.1123), Defendants argued that Dy. Moring only touched D.J. because D.J. pushed him first, though this initial push by D.J. is not seen in any video recording of the arrest, which Defendants contend is the precise reason for and problem with the tampering of J.P.'s video. The district court ignored evidence of this video tampering in its Order. In any event, the slight use of force by Dy. Moring cannot be said to be "objectively unreasonable" and thus unlawful.

91359

Furthermore, the district court's opinion on summary judgment denying Defendants' Qualified Immunity on D.J.'s First Amendment Retaliation claim ignored clear Fifth Circuit precedent as set forth in *Buehler*. ROA.1125-1129. Thus, the court's conclusion that Dy. Moring's conduct violated D.J.'s "clearly established" First Amendment right was flawed. ROA.1129. While individuals have a clearly established First Amendment right to film police, generally, they do not have a right to exceed that right to the point of interference. Moreover, as noted by Defendants' *Reply in Support of Summary Judgment*, the fact that D.J.'s video footage was temporarily blocked was a secondary effect of Dy. Moring's attempt to stop D.J. from interfering with the arrest of Plaintiff. ROA.815. The district court failed to cite to or discuss any case law which would suggest that Defendants' display of force on a non-compliant individual standing too close to the scene of an arrest and thereby threatening officer safety was *clearly* excessive in a *clearly* unreasonable way, which is part of the excessive force standard. *See Elizondo v. Green*, 671 F.3d 506, 511 (5th Cir. 2012). Rather, the cases cited by the district court were wholly unrelated to the situation presently at issue, and they do not even suggest, let alone clearly establish, that denial of Qualified Immunity was appropriate.

Accordingly, the district court's consideration of Dy. Hart and Dy. Moring's Qualified Immunity defense failed to yield any clearly established case law,

particularized to the facts of this case, under which the Defendants' conduct in this matter could be viewed as violative of federal law and objectively unreasonable. "The correct inquiry…was whether it was clearly established that the Fourth Amendment prohibited the officer[s'] conduct in the situation [they] confronted…'" *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015) (citation omitted). That inquiry was improperly set aside in this matter in deference to more general, non-context specific Fourth Amendment case law. Because Plaintiffs failed to establish *clearly* excessive force under *clearly* established law particularized to the facts of this case, the district court erred in denying Defendants Qualified Immunity.[16]

## III.    <u>CONCLUSION: SUMMARY JUDGMENT IS PROPER</u>

In the wake of the district court's denial of summary judgment based on Qualified Immunity, Defendants question exactly what this court would have police officers do when confronted with similar circumstances. This case ensued after Plaintiff-Appellee attempted to terminate a traffic stop unlawfully and unilaterally. After being informed that she was under arrest, Plaintiff immediately began to actively resist arrest, and Defendants utilized only the degree of force necessary to overcome her resistance. Defendants' use of force persisted in a "measured and

---

[16]    Defendants-Appellants assert a right to Qualified Immunity both because they did not commit a Fourth Amendment or First Amendment violation and because, even if they did—which is denied—they did not act in an objectively unreasonable manner in contravention of clearly established law.

91359

ascending" manner in response to Plaintiff's resistance. *Buehler*, 27 F.4th 969 (5th Cir. 2022). In such situations, public policy has long dictated that a police officer's attempt to arrest an individual suspected of committing a crime – any crime – and to control the scene of that arrest does not violate the Fourth Amendment.

Defendants question if this Court is now prepared to lay down a new rule requiring law enforcement officers to allow resistant and fleeing subjects to simply walk away – a policy which has never before been entertained by law enforcement, the courts, nor modern society. It is obvious the perverse incentives such a rule would create: every individual who disagrees with an arresting officer would know that avoiding arrest is both possible and without consequence.

Because the district court erred in (i) denying Qualified Immunity to Defendants based upon Plaintiffs' allegations rather than record evidence; and (ii) denying Qualified Immunity to Defendants when there was no clearly established case law identified, particularized to the facts of the case, which Defendants violated in an objectively unreasonable way, the Order of the district court should be reversed and summary judgment should be entered in favor of Defendants-Appellants.

**[SIGNATURE ON NEXT PAGE]**

91359

Respectfully submitted,

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*

**Chadwick W. Collings, T.A. (La. Bar. No. 25373)**
**Sarah A. Fisher (La. Bar No. 39881)**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone:  (985) 292-2000**
**Facsimile:   (985) 292-2001**
**Email:        ccollings@millinglaw.com**
***Counsel for Kyle Hart and Ryan Moring***

91359

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to FED. R. APP. 25, undersigned counsel certifies that a copy of the foregoing has been served upon counsel of record for all parties, via electronic mail, at the following addresses:

| | |
|---|---|
| Stephanie Legros Willis, Esq.: | swillis@laaclu.org |
| Nora Sam Ahmed, Esq.: | nahmed@laaclu.org |
| Keith Cohan, Esq.: | kcohan@reidcollins.com |
| Ryan Mitchell Goldstein, Esq.: | rgoldstein@reidcollins.com |
| Sean David Johnson, Esq.: | sjohnson@reidcollins.com |
| Vincenzo A. Novelli, Esq.: | vnovelli@reidcollins.com |

on this, the 12th day of October, 2022, the date of electronic filing. All counsel of record are also this day receiving service of the foregoing via the Court's ECF system. Hard copies will be sent via U.S. Mail to all counsel of record after the electronic filing is accepted by the Clerk of Court.

*s/ Chadwick W. Collings*
**Chadwick W. Collings**

91359

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 10,490 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman font.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*

**Chadwick W. Collings, T.A. (La. Bar. No. 25373)**
**Sarah A. Fisher (La. Bar No. 39881)**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**Email:      ccollings@millinglaw.com**
*Counsel for Kyle Hart and Ryan Moring*

Dated: October 12, 2022

91359